# United States Court of Appeals
# for the District of Columbia Circuit

### No. 23-7160

AENERGY, S.A.,

*Plaintiff-Appellant,*

*v.*

REPUBLIC OF ANGOLA; MINISTRY OF ENERGY AND WATER OF THE
REPUBLIC OF ANGOLA; MINISTRY OF FINANCEOF THE REPUBLIC OF
ANGOLA; EMPRESA PUBLICA DE PRODUCAO DE ELECTRICIDADE, EP;
EMPRESA NACIONAL DE DISTRIBUICAO DE ELECTRICIDADE,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Columbia in
No. 1:22-cv-02514-TNM, Honorable Trevor Neil McFadden, U.S. District Judge*

## BRIEF FOR PLAINTIFF-APPELLANT

VINCENT LEVY
KEVIN D. BENISH
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York 10017
(646) 837-5151
vlevy@hsgllp.com
kbenish@hsgllp.com

*Counsel for Plaintiff-Appellant*

March 4, 2024

# Certificate as to Parties, Rulings, and Related Cases

*Parties and amici.* The following is a list of all parties, intervenors, and amici who have appeared before the district court, and all persons who are parties, intervenors, or amici in this court: Aenergy, S.A. (plaintiff-appellant); Republic of Angola (defendant-appellee); Ministry of Energy and Water of the Republic of Angola (defendant-appellee); Ministry of Finance of the Republic of Angola (defendant-appellee); Empresa Pública De Produção De Electricidade, EP (defendant-appellee); and Empresa Nacional De Distribuição De Electricidade (defendant-appellee).

*Rulings under review.* The June 20, 2023 decision by District Court Judge Trevor N. McFadden granting defendants motion to dismiss on *forum non conveniens* grounds. *See Aenergy, S.A. v. Republic of Angola*, 2023 WL 4075627 (D.D.C. June 20, 2023); A112–A142. And the October 27, 2023 decision by Judge McFadden denying plaintiff's motion to reconsider. *Aenergy, S.A. v. Republic of Angola*, 2023 WL 71111209 (D.D.C. Oct. 27, 2023); A149–A154.

*Related cases.* Plaintiff and a subsidiary previously filed a related case against defendants here and additional parties in the Southern District of New York. *Aenergy, S.A. v. Republic of Angola*, 2021 WL 1998725

(S.D.N.Y. May 19, 2021). That court dismissed the case on the basis of *forum non conveniens*, *id.* at *1, a decision which the Second Circuit affirmed. *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119 (2022), *cert. denied* 143 S. Ct. 576 (2023).

## CORPORATE DISCLOSURE STATEMENT
## PURSUANT TO RULE 26.1

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant Aenergy S.A. states that it is a private company, that it does not have a corporate parent, and that there is no publicly held corporation that owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................... 1

STATEMENT OF JURISDICTION .......................................... 4

ISSUES PRESENTED ............................................................. 5

STATEMENT OF THE CASE ................................................... 6

    A.    The Parties ...................................................... 6

    B.    MINEA Terminates AE's Contracts And AE Contests The Termination Decision In Administrative Proceedings In Angola ............................................................ 6

    C.    AE Sues Angola And GE In The SDNY, Which Dismisses The Case ................................................ 8

    D.    The Second Circuit Affirms The SDNY's Dismissal ............ 11

    E.    AE Files A New D.D.C. Case Requesting A Settlement Of Accounts, Which The Court Dismisses Based On The SDNY Action ................................................... 13

SUMMARY OF ARGUMENT ................................................. 16

ARGUMENT ....................................................................... 19

I.    Issue Preclusion Does Not Apply ................................... 20

    A.    Defendants Bear The Burden To Show The Dismissal Of The SDNY Action Is Entitled To Issue Preclusive Effect ........... 20

    B.    Issue Preclusion Does Not Bar This Lawsuit Because The Facts Relevant To *Forum Non Conveniens* Are Different .... 22

II.   The District Court's *Forum Non Conveniens* Ruling Was Erroneous ................................................. 33

    A.   Angolan Courts Are Inadequate As A Matter Of Law ......... 34

        1.   Defendants Bore The Burden To Prove The Availability Of A Remedy In Angola For Plaintiff's Claim Here .... 34

        2.   The Court's Findings Rendered Angolan Court Inadequate ................................................. 38

    B.   Separately, The Court Erred By Not Holding Defendants To Their "Heavy Burden" ................................ 41

        1.   Defendants Did Not Even Try To Meet Their Burden On Adequacy ................................................. 42

        2.   Defendants Did Not Meet Their Burden On Inconvenience ................................................. 46

            A.   Degree Of Deference ................................ 46

            B.   Private And Public Factors ................................ 48

                i.   Private Factors ................................ 48

                ii.   Public Factors ................................ 52

CONCLUSION ................................................. 53

# TABLE OF AUTHORITIES

**Cases**

*Aenergy, S.A. v. Republic of Angola,*
  2021 WL 1998725 (S.D.N.Y. May 19, 2021) ............................. 9, 10

*Aenergy, S.A. v. Republic of Angola,*
  31 F.4th 119 (2d Cir. 2022),
  *cert. denied,* 143 S. Ct. 576 (2023) ......................... 11, 27, 32, 39, 50

*Alexander Proudfoot, Plc v. Fed. Ins. Co.,*
  860 F. Supp. 541 (N.D. Ill. 1994) ...................................... 21

*Associacao Brasileira de Medicina de Grupo v. Stryker Corp.,*
  891 F.3d 615 (6th Cir. 2018) ........................................... 34

*Azima v. RAK Inv. Auth.,*
  926 F.3d 870 (D.C. Cir. 2019) ......................................... 43

*Chick Kam Choo v. Exxon Corp.,*
  486 U.S. 140 (1988) .................................................. 20

*Conflict Kinetics, Inc. v. Bagira Systems, Ltd.,*
  2024 WL 339347 (4th Cir. Jan. 30, 2024) ........................... 2, 17, 23

*Connors v. Tanoma Min. Co., Inc.,*
  953 F.2d 682 (D.C. Cir.1992) ................................... 16, 21, 27

*Deb v. SIRVA, Inc.,*
  832 F.3d 800 (7th Cir. 2016) .............................. 34, 44, 45

*DiRienzo v. Philip Servs. Corp.,*
  294 F.3d 21 (2d Cir. 2002) ............................................. 34

*Dole Food Co., Inc. v. Watts,*
  303 F.3d 1104 (9th Cir. 2002) ......................................... 44

*El-Fadl v. Cent. Bank of Jordan,*
  75 F.3d 668 (D.C. Cir. 1996) ....................... 17, 33, 34, 44

*Gay v. Marriott Int'l, Inc.,*
  2019 WL 13211111 (N.D. Ga. Nov. 18, 2019) ............................. 26

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ............................... 16, 41, 46, 49, 52

*Hogans v. Charter Commc'ns, Inc.,*
    563 F. Supp. 3d 464 (E.D.N.C. 2021) ............................................ 26

*I.A.M. Nat. Pension Fund, Ben. Plan A v. Industrial Gear Mfg. Co.,*
    723 F.2d 944 (D.C. Cir. 1983) ....................................................... 20

*\*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000,*
    499 F. Supp. 2d 437 (S.D.N.Y. 2007), *aff'd sub nom. Geier v.*
    *Omniglow Corp.,*
    357 F. App'x 377 (2d Cir. 2009) ..................................................... 25

*In re Subpoena Duces Tecum Issued to Commodity Futures*
    *Trading Comm'n,*
    439 F.3d 740 (D.C. Cir. 2006) ................................................. 20, 21

*\*J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.. Ltd.,*
    2009 WL 55010 (M.D. Fla. Jan 7, 2009) ..................... 24, 25, 26, 31

*Jackson v. Office of the Mayor of District of Columbia,*
    911 F.3d 1167 (D.C. Cir. 2018) ..................................................... 20

*Jean-Baptiste v. D.C.,*
    958 F. Supp. 2d 37 (D.D.C. 2013) ................................................. 28

*Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp.,*
    660 F.2d 712 (8th Cir. 1981) ......................................................... 21

*Montana v. United States,*
    440 U.S. 147 (1979) ...................................................................... 21

*\*Nemariam v. Federal Democratic Republic of Ethiopia,*
    315 F.3d 390 (D.C. Cir. 2003) ......................... 35, 36, 37, 38, 40, 41

*Pailes v. U.S. Peace Corps,*
    783 F. Supp. 2d 1 (D.D.C. 2009) ................................................... 26

*Phoenix Canado Oil Co. Ltd. v Texaco, Inc.,*
    78 F.R.D. 445 (D. Del. 1978) ........................................................ 35

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ................................................................. 35, 48

*Pollard v. E.I. du Pont de Nemours & Co.,*
    532 U.S. 843 (2001) ...................................................................... 28

*Rederford v. U.S. Airways, Inc.,*
    589 F.3d 30 (1st Cir. 2009) ........................................................... 28

*Samantar v. Yousuf,*
    560 U.S. 305 (2010) ................................................................ 17

***Shi v. New Mighty U.S. Trust,***
    918 F.3d 944 (D.C. Cir. 2019)....16, 18, 19, 33, 41, 46, 47, 48, 49, 52

***Simon v. Republic of Hungary,***
    911 F.3d 1172 (D.C. Cir. 2018)................................... 49, 50, 51, 52

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ................................................................ 41

***TMR Energy Ltd. v. State Property Fund of Ukraine,***
    411 F.3d 296 (D.C. Cir. 2005)...................... 3, 29, 35, 37, 38, 40, 42

*United States v. Freita Da Costa,*
    Case No. 23-cr-00610 (S.D.N.Y.) .............................................. 9

**Statutes**

28 U.S.C. § 1291 ....................................................................... 5

28 U.S.C. § 1330 ....................................................................... 4

28 U.S.C. § 1602 ....................................................................... 4

28 U.S.C. § 1605(a)(2)................................................................ 4

**Rules**

Fed R. App. P. 4 ....................................................................... 5

Fed. R. Civ. P. 12 ............................................................ 15, 19, 53

Fed. R. Civ. P. 59 ................................................................. 4, 5

**Other Authorities**

14D Wright & Miller Fed. Prac. & Proc. Juris. § 3828.5 (4th ed.) ... 21, 23

Ava Benny-Morrison & Chris Dolmetsch, *Ex-GE Angola Executive
    Charged With Fraud by US Over $1.1 Billion Angolan Project*,
    Bloomberg (Dec. 15, 2023),
    www.bloomberg.com/news/articles/2023-12-15/ge-executive-
    charged-with-fraud-over-1-1-billion-angola-project ...................... 10

Restatement (Second) of Judgments § 20 (1982).................................26

# GLOSSARY

Aenergy S.A. .................................................................AE

*Forum non conveniens*...........................................FNC

General Electric..................................................... GE

Ministry of Water and Energy ......................................MINEA

Southern District of New York ...................................... SDNY

## INTRODUCTION

This is an action to collect an unpaid debt in a case over which the district court indisputably has jurisdiction. The plaintiff entered into contracts to provide substantial commercial goods and services to the defendants, which are arms of the Angolan government. The complaint alleges that when defendants terminated those contracts, the plaintiff had provided substantially more goods and services than plaintiff was ever paid for. This lawsuit just seeks compensation for the unpaid goods and services provided.

Although this is a narrow suit focusing solely on whether the plaintiff was paid in full, the district court dismissed it on *forum non conveniens* ("FNC") grounds because the plaintiff had earlier filed a broader lawsuit in the SDNY that had been dismissed on FNC grounds. The earlier lawsuit mainly concerned other issues. It primarily challenged the termination of the contracts and raised a related unlawful expropriation of property claim. In that suit, the courts held that plaintiff should litigate the termination of the contracts and other issues in Angola, in large part because plaintiff had filed a then-pending administrative case challenging the contracts' termination and seeking their reinstatement. In this

case, the district court below ruled that the doctrine of issue preclusion and the prior SDNY case mandated dismissal on FNC grounds, or that alternatively FNC applied even if issue preclusion did not, given Angola was an adequate alternative forum.

This Court should reverse the decision below.

First, the court below misapplied the doctrine of issue preclusion. "The issue resolved in the previous litigation was *forum non conveniens.*" *Conflict Kinetics, Inc. v. Bagira Systems, Ltd.*, 2024 WL 339347, at *2 (4th Cir. Jan. 30, 2024). But, as the Fourth Circuit recently explained, if a second case involves materially different facts or circumstances that "change the availability, adequacy, and convenience determinations underlying [a] previous resolution," then this would "warrant a fresh forum analysis." *Id.* at *3.

That is the situation here. As noted, the Second Circuit held that there was an adequate alternative forum—despite jurisdictional limitations in Angola foreclosing damages claims there—because the termination of plaintiff's contracts was also being contested in the Angolan Supreme Court, where the plaintiff sought the contracts' reinstatement.

But the current action for collection of a debt is not at all in issue in the Angolan Supreme Court, and a remedy in that court reinstating the contracts could not redress the debt. Moreover, the court below "credit[ed]" plaintiff's assertion that it cannot now bring suit in Angola seeking payment of the debt subject of the suit. That means that, unlike in the prior case, there is no remedy at all in Angola for plaintiff's claim. All of this, and other factors, renders the instant suit materially distinct, and made it improper for the lower court to invoke issue-preclusion principles.

Second, although the district court said that it was persuaded by the reasoning of the courts dismissing the prior suit and would dismiss this one even applying a fresh look at the evidence, that constituted legal error. As is settled, a FNC motion should be denied if there is "no other forum to which the plaintiff may repair [that] can grant the relief it may obtain in the forum it chose." *TMR Energy Ltd. V. State Property Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005). Again, the district court found that this was the situation here for the debt collection claim, so it was legal error to dismiss the suit, as an order reinstating contracts plainly cannot remedy a past debt.

Third, the district court separately erred by improperly relieving defendants of their burden to establish that an "adequate alternative forum" exists such that FNC dismissal would even be possible. The Supreme Court and this Circuit have consistently held that defendants bear a heavy burden to justify FNC dismissal and must show that a foreign forum has both subject-matter jurisdiction and personal jurisdiction over a plaintiff's claims. Defendants did not even try to meet this burden, and the district court committed an error of law by deciding that issue in their favor. What's more, the Defendants also failed to provide evidence that the FNC factors strongly favor dismissal—a legal error that also mandates reversal of the district court's decision.

## STATEMENT OF JURISDICTION

As this case was filed against foreign-sovereign defendants, the district court had subject-matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602, *et seq.*, provided that one of the exceptions to immunity applied. The district court held it had jurisdiction under the commercial-activities exception, 28 U.S.C. § 1605(a)(2).

The district court dismissed the case under FNC on June 20, 2023. Plaintiff timely moved for reconsideration under Fed. R. Civ. P. 59 on

July 18, 2024, and the district court denied reconsideration on October 27, 2023.  Plaintiff noticed an appeal on November 27, 2023, within 30 days of the denial of the Fed. R. Civ. P. 59 motion.  The notice of appeal was timely filed, Fed. R. App. P. 4(a)(1)(A), 4(a)(4)(A)(iv), and this Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Where a first lawsuit is dismissed on the grounds of *forum non conveniens*, is that dismissal entitled to issue-preclusive effect in a second, narrower suit that, unlike the first, presses only claims that cannot be brought in the alternative forum and involves materially narrower factual matters than the first?

2. If a court credits a plaintiff's assertion that the claims cannot be brought in the foreign tribunal, may a district court dismiss the suit on *forum non conveniens* grounds anyway, notwithstanding that the law places upon the defendant the burden to show that a remedy is available in an alternative forum?

3. Does a district court commit legal error by dismissing a lawsuit on *forum non conveniens* grounds where the defendant does not even

try to discharge its burdens, including of showing an alternative forum is adequate or that a U.S. trial will actually be burdensome?

## STATEMENT OF THE CASE

### A.  The Parties

Plaintiff Aenergy S.A. ("AE") was incorporated in Angola in 2012 and is owned by a Portuguese citizen.  A15.

Defendants are the Angolan government, two of its ministries (including the Ministry of Water and Energy, or MINEA), and two instrumentalities that are public utilities owned by MINEA.  *Id.* at A15–A16.

Between 2014 and 2017, AE entered into thirteen commercial contracts worth more than $1.1 billion with Angolan government entities.  *Id.* at A13, A22.  To fulfill those contracts, AE worked with General Electric and its affiliates (collectively, "GE").  *Id.* at A18.  Moreover, GE Capital provided financing to Angola for the project.  *Id.*

### B.  MINEA Terminates AE's Contracts And AE Contests The Termination Decision In Administrative Proceedings In Angola

On September 2, 2019, MINEA notified AE that, pursuant to a presidential decree, it would terminate AE's contracts.  As justification, the notice gave two reasons: (1) purported "irregularities" (alleged "conduct in acquiring, using GE Capital's credit line, four turbines not included in

the scope of any of the Agreements executed with MINEA") and (2) that an "essential condition behind the execution of the Agreements" – namely, "that AENERGIA S.A. was a technological partner of GE," – was supposedly "no longer … verified." Dkt. 25-16 at 7.

The notice of termination stated that it was "without prejudice of the global settling of accounts with AENERGIA, S.A., still to be determined as a result of the evaluation of the level of physical and financial execution of the aforementioned agreements." *Id.* at 9.

AE then contested "Angola's decision to terminate the contracts" by filing an administrative complaint directly with MINEA, the relevant agency, and then (when that proved unsuccessful) with the President of Angola. A32.

After the President denied relief, AE filed a petition with the Supreme Court of Angola. This petition, roughly the equivalent under Angolan law to a proceeding under the U.S. Administrative Procedure Act, targeted the administrative acts resulting in termination of the contracts. See Dkt. 25-17. The petition contested the grounds invoked by the Angolan government for terminating the contracts and, for relief,

sought an order vacating those administrative orders, "including the act of termination of the thirteen MINEA contracts." Dkt. 25-17 at 140.[1]

No part of the petition addressed the question of the settling of accounts for work already performed by AE. Nor did any part of the request for relief request any remedy pertaining to that issue. That is unsurprising, given that MINEA told AE the termination was "without prejudice" to the "global settling of accounts." Dkt. 25-16 at 9.

## C.   AE Sues Angola And GE In The SDNY, Which Dismisses The Case

In May 2020, after the Angolan Supreme Court missed procedural deadlines and as a limitations period to seek damages was approaching, AE and one of its affiliates filed an action for damages in the SDNY. A32–A33. That action was filed against the same state sovereign entities that are Defendants here, as well as various GE entities.

---

[1] The petition claimed "a) lack of competence of the author of the act and no delegation of powers; b) disregard of the hearing of interested parties; c) lack of reasoning; d) violation of the principle of the presumption of innocence; e) violation of the principles of good faith and protection of trust; f) breach of the principle of proportionality; g) violation of the principle of legality; h) violation of property rights; i) breach of contractual duties; []j) error in the factual assumptions (i) regarding the alleged irregularities of AENERGY in the scope of the GE Capital financing; and (ii) regarding the alleged disappearance of the assumption of the AENERGY / MINEA Contracts, of GE technological support in partnership with AENERGY." Dkt. 25-17 at 140.

The SDNY complaint included six claims against Defendants, and claimed that GE tortiously procured Angola's wrongdoing. Although one part of one of those claims sought payment for work performed but not paid for, the gravamen of AE's case (as the court saw it) was that GE wrongfully procured the termination of AE's contracts. More specifically, as the court described it, AE's detailed complaint asserted that the termination was improper because AE had not engaged in any misconduct and had not sought to double charge Angola for turbines. Instead, as the SDNY explained, AE claimed that GE's former chief executive in Angola was the one who engaged in wrongdoing, including by falsifying documents and making misrepresentations to Angolan officials regarding the number of turbines that Angola supposedly bought from AE, leading Angola to terminate the contracts and seize four turbines on a basis that AE factually disputed. *See Aenergy, S.A. v. Republic of Angola*, 2021 WL 1998725, at *1–*6 (S.D.N.Y. May 19, 2021).

(Federal prosecutors in the SDNY have since indicted that former GE executive, Wilson Da Costa, for falsifying Angolan government documents and falsely using the identities of an Angolan official and an AE executive. *United States v. Freita Da Costa*, Case No. 23-cr-00610

9

(S.D.N.Y.). Mr. Da Costa is currently located in New York, where he is detained and awaiting criminal prosecution. *See* Ava Benny-Morrison & Chris Dolmetsch, *Ex-GE Angola Executive Charged With Fraud by US Over $1.1 Billion Angolan Project*, Bloomberg (Dec. 15, 2023), www.bloomberg.com/news/articles/2023-12-15/ge-executive-charged-with-fraud-over-1-1-billion-angola-project).

In May 2021, the SDNY dismissed plaintiff's complaint on FNC grounds. <u>First</u>, it reasoned that plaintiff was entitled to "minimal deference" to AE's choice of forum, based in large measure on AE's foreign nationality, the foreignness of the claims and parties in suit, and the "even more telling . . . fact that before coming to this Court, AE first chose a different forum to litigate the termination of the AE-MINEA Contracts: Angola." 2021 WL 1998725, at *10.

<u>Second</u>, the court reasoned that Angolan courts were an adequate alternative because, though a question was raised after oral argument as to whether Angolan courts would hear AE's contract claims in view of a non-waivable jurisdictional time bar there, the complaint included other claims too, so "even if Plaintiffs' two breach of contract claims against the

Angolan Defendants may not be brought, Angola still 'permits litigation of the subject matter of the dispute.'" *Id.* at *13.

Third, the court asserted that the core of the facts relevant to that case occurred in Angola, and thus tilted the scale toward the courts of that country under the private and public factors:

> The alleged breaches of the AE-MINEA Contracts and the Soyo II Concession occurred in Angola. For example, the Complaint alleges that President Lourenço adopted a resolution that terminated the AE-MINEA Contracts and transferred the work to GE. The Angolan government then sent a termination letter to AE in Angola. Angolan authorities subsequently seized AE's property in Angola. The GE Defendants' supposed fraud that led to these events also occurred in Angola. GE employees, presumably in Angola, created fake letters using Adobe Photoshop, and the CEO of GE Angola, operating "from the safety and secrecy of his home in Luanda," took photographs of the fake letters. At a meeting with MINEA and AE (again, presumably in Angola), da Costa showed these letters in an effort to "support his false claims."

*Id.*, at *16 (citations omitted). As a result, the court dismissed the case in favor of Angolan courts.

## D.    The Second Circuit affirms the SDNY's dismissal

The Second Circuit affirmed. *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023). In line with the SDNY's description, the Circuit characterized AE's case as concerning a challenge to Angola's termination of AE's contracts, and the

Circuit did not once reference the fact that there was a request for damages related to work AE performed pre-termination.

Thus, it began by characterizing the complaint as "alleg[ing] that Angola wrongfully cancelled AE's Angolan power plant contracts and seized its related property" and "that GE interfered with its contracts and prospective business relations." *Id.* at 124.

After ruling that standard-fare analysis applies in FSIA cases (*id.* at 126–28), the court upheld the district court's application of those factors. <u>First</u>, it held the district court had appropriately applied lesser deference based on the foreignness of the parties and conduct, and that "the District Court had ample basis to find that AE sought a tactical advantage in New York, as AE 'first chose a different forum to litigate the termination of the AE-MINEA Contracts: Angola.'" *Id.* at 128–30.

<u>Second</u>, the Second Circuit found no error in the district court's adequacy ruling. It assumed AE is now "jurisdictionally time-barred in Angola from seeking breach of contract damages" in Angola. *Id.* at 130. Nonetheless, "AE brings 'eight other claims'" and, "even if AE cannot recover damages on its breach of contract claim against Angola, it has sought equitable contract remedies in Angola, allowing the Angolan court

to address the essential subject matter of the dispute." *Id.* at 131. For support, it quoted AE's "prayer in the Supreme Court of Angola that the contracts 'should be considered in force.'" *Id.* at 131 n.60.

Third, the Second Circuit affirmed the district court's evaluation of the private and public factors. Again, without alluding to any of the facts or issues related to the non-payment claim advanced here, it noted, *inter alia*, that "[a]ll of the key events occurred in Angola," "includ[ing] the fabrication of letters indicating Angola's agreement to buy more turbines, GE's insistence that the contracts had been amended, and the Angolan President's termination of the contracts." *Id.* at 133. The court added that, in that light, Angola's "witnesses may offer testimony on important topics, including GE's alleged efforts to convince Angola to allow it to take over AE's contracts and the basis and good faith of Angola's alleged claim of contractual irregularities." *Id.*

## E.     AE Files A New D.D.C Case Requesting A Settlement Of Accounts, Which The Court Dismisses Based On The SDNY Action

In view of the Second Circuit's reasoning and ruling regarding AE's claims seeking a remedy for termination of its contracts—and in light of caselaw discussed below at pp. 22–26 that permits a party to trim its case

to address issues raised by a first FNC dismissal—AE filed a new action that solely sought a settlement of accounts.

Angola's termination notice had said the termination of the contracts was "without prejudice" to this settlement of accounts, Dkt. 25-16 at 9, but it never occurred, AE made no request for it in Angolan court, and the claim is now jurisdictionally unavailable in Angola. Thus, the new complaint alleged only a single count for breach of contract, which cannot be filed elsewhere, and no claim based on termination.

On Defendants' motion, the district court (McFadden, J.) granted the motion and dismissed the case. First, it ruled that the doctrine of issue preclusion foreclosed litigation of the question whether this case should be dismissed on the ground of FNC, because "the *forum non conveniens* issue before it is the 'same' as in the prior case." A118–A124. In so doing, the court did not consider the key differences between the two cases resulting from AE's trimming of its case to remove anything having to do with Angola's termination of the contracts or expropriation of AE's property. *Id.*

Second, the court stated it would dismiss for FNC even if issue preclusion did not apply. Regarding adequacy, the court "credit[ed]" AE's

assertion that its sole "claim [wa]s barred by a nonwaivable limitations period" in Angolan court. A127. However, citing the Second Circuit decision in the prior case, it noted that AE had "appealed" the contracts' termination "to the Angolan Supreme Court, seeking [their] reinstatement." *Id.* It added that "Aenergy's chance at equitable relief before the Angolan Supreme Court provides 'at least some remedy' for its contract dispute." A128.

Next, following the SDNY's lead, it brushed aside as illegitimate the "need to sue in the United States so that it can bring a damages action for breach of contract despite it simultaneously seeking reinstatement of those same contracts in Angola." A130. And it reasoned that the relevant factors tilted toward Angola as, *inter alia*, most potential witnesses and evidence were abroad, including Angolan state witnesses. A131.

Third, although it dismissed the case, the court went on to deny certain of the other "defenses" that Defendants had interposed. To begin, it rejected Defendants' assertion that the court lacked jurisdiction under the FSIA, holding that D.C. courts plainly did have jurisdiction under the FSIA over plaintiff's claim. A133–A136. Next, it rejected Defendants' arguments, brought under Rule 12(b)(6), that some of the Defendants

could not be liable for breach of contract as supposed non-signatories to the agreements. A138–A140. The court did not address Defendants' alternative arguments that (a) the case belonged in arbitration or (b) abstention principles justified a stay. A135 n.6.

## SUMMARY OF ARGUMENT

The doctrine of FNC "presupposes at least two forums" may consider a plaintiff's claim, while "furnish[ing] criteria for choice between them." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). Dismissal is appropriate "only in rare cases, and only where the defendant meets a heavy burden of showing that suit in the United States is so inconvenient as to be harassing, vexing, or oppressive." *Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 948 (D.C. Cir. 2019). The district court erred in holding that this was one of those "rare cases."

**I.** The district court first erred in holding that issue preclusion applied so the FNC question was settled. The party invoking issue preclusion has the burden to show "that the same issue was actually and necessarily determined in a prior litigation." *Connors v. Tanoma Min. Co., Inc.*, 953 F.2d 682, 684 (D.C. Cir.1992) (cleaned up). But, as the Fourth Circuit recently held, issue preclusion does not apply to FNC dismissals

if the second case involves materially different circumstances. *See Conflict Kinetics, Inc. v. Bagira Systems, Ltd.*, 2024 WL 339347, at *3 (4th Cir. Jan. 30, 2024). Rather, the FNC question must be analyzed anew, because the different circumstances mean that the issue presented by an FNC motion is different, not the same. That is the case here: the current case involves a very different set of claims than the prior case (one debt issue as opposed to many issues focused on the termination of contracts) and it involves very different facts (i.e., plaintiff cannot bring its debt-collection claim, the sole claim presented here, in an Angolan court). The prior Second Circuit case did not focus on the claim here, nor did it otherwise adjudicate the relevant facts or issues. Thus, preclusion is inapplicable.

**II.A.** Setting aside issue preclusion, the district court's analysis of FNC errs because Angola is not an adequate alternative forum. To prevail on an FNC motion, a defendant must show "that there is an adequate alternative forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 677 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). Otherwise an FNC motion automatically fails. The proposed other forum in this case is Angolan court. But the district court

accepted AE's assertion that the only claim it brought in this case—a claim for unpaid work—could not be brought in an Angolan court due to "a nonwaivable limitations period." A127. That should have been the end of the analysis. Instead, the district court ruled Angolan courts were adequate because perhaps AE could obtain equitable relief from the Angolan Supreme Court in its separate case challenging the termination of its contracts. But that case has nothing to do with the unpaid-work claim, and the Angolan Supreme Court cannot provide any adequate relief on that issue.

**II.B.** The district court's FNC analysis contains two other legal errors, each of which is also an independent ground for reversal. It is well-established that "a defendant invoking *forum non conveniens* ordinarily bears a *heavy burden* in opposing the plaintiff's chosen forum." *Shi*, 918 F.3d at 948 (emphasis added). The district court did not come close to requiring defendants to satisfy that burden on either the adequacy of Angolan courts or the inconvenience of litigating here. Defendants offered no argument or evidence to satisfy their burden on adequacy, but the district court wrongly just found Angola adequate anyway. The same is true of inconvenience. While the law requires Defendants to show that private

and public interest factors strongly favor dismissal, *see Shi*, 918 F.3d at 948, the court found this element satisfied despite the Defendants failure to offer meaningful evidence it would be inconvenient to litigate the only claim at issue in this case here instead of in Angola.

## ARGUMENT

The district court erred in both its application of issue preclusion and its application of FNC, and instead should have exercised the jurisdiction it found existed under the FSIA to adjudicate plaintiff's claim (which it found survived defendants' Rule 12(b)(6) motion). Issue preclusion prevents re-litigation of an issue where the "same issue" was decided in a previous matter, it does not apply here given the FNC issue concerns very different facts and legal claims. The district court's FNC analysis also erred for multiple independent reasons. First, the court admitted AE's claim is barred by a statute of limitations in Angolan court, and thus should have concluded that no adequate remedy exists in Angola, rendering FNC inapplicable. Second, the district court erred by not requiring Defendants to meet their burden, as to either the adequacy of Angola as a forum or to the inconvenience of litigating here.

## I. Issue Preclusion Does Not Apply

### A. Defendants Must Show The SDNY Dismissal Rested On The "Same Issues" As Here For Issue Preclusion To Apply

As a dismissal of a suit on FNC grounds is quasi-jurisdictional and not an adjudication on the merits, claim preclusion does not prevent a second lawsuit between the same parties. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148–49 (1988). Only issue preclusion, also known as collateral estoppel, could apply. *Id.*; *see also Jackson v. Office of the Mayor of District of Columbia*, 911 F.3d 1167, 1171 (D.C. Cir. 2018) ("Without exception, an earlier judgment must have been rendered 'on the merits' for res judicata to apply.").

The doctrine of issue preclusion is more limited: "Whereas claim preclusion forecloses all that which might have been litigated previously, issue preclusion treats as final only those questions actually and necessarily decided in the prior suit." *I.A.M. Nat. Pension Fund, Ben. Plan A v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983).

Moreover, "the party invoking collateral estoppel . . . bears the burden of establishing that the conditions for its application have been satisfied." *In re Subpoena Duces Tecum Issued to Commodity Futures*

*Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006) (collecting author-ity).  This entails "the burden of showing that the same issue was actually and necessarily determined in a prior litigation."  *Connors v. Tanoma Min. Co., Inc.*, 953 F.2d 682, 684 (D.C. Cir.1992) (cleaned up).

This Court "address[es] de novo" the "question of law" of whether an "issue in [a second] suit [is] 'in substance the same' as that decided in the [prior] litigation," thus triggering the doctrine of issue preclusion.  *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)).  In light of the burden of proof, if the Court is left with "lingering uncertainty" as to whether a prior suit resolved the same question, the doctrine does not apply.  *Connors*, 953 F.2d at 685.

A first dismissal on FNC grounds will not preclude a second lawsuit if the second suit raises "different objective *forum non conveniens* criteria or different facts underlying the application of those criteria."  14D Wright & Miller Fed. Prac. & Proc. Juris. § 3828.5 (4th ed.); *see, e.g.*, *Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp.*, 660 F.2d 712, 716 (8th Cir. 1981).  That is because, in that event, a motion to dismiss a second lawsuit on FNC grounds does not present the "same issue" previ-ously resolved.  *Connors*, 953 F.2d at 684.

**B. Issue Preclusion Does Not Bar This Lawsuit Because The Facts Relevant To *Forum Non Conveniens* Are Different**

Following the Second Circuit's determination that the Angolan Supreme Court proceeding may provide an adequate alternative and more convenient forum to adjudicate the termination of Plaintiff's contracts, Plaintiff trimmed its case substantially and filed a new suit here seeking solely to recover damages for work performed that Angola never paid for. That trimmed-down, new suit does not contest (for purposes of this action) any of the broader matters at issue in the prior SDNY suit, including the core question whether Angola's termination of the contracts was appropriate. Moreover, unlike the question of the contracts' termination, the question whether Plaintiff is due sums for work performed was not put in issue in the Angolan Supreme Court proceeding. As this is a substantially different lawsuit, involving substantially different facts and issues, the SDNY dismissal does not foreclose litigation of whether this lawsuit should be dismissed for FNC.

1. Multiple courts considering re-filed suits that seek to address a problem identified by a prior dismissal hold that the doctrine of issue preclusion will not bar relitigation of the question whether a lawsuit may

proceed. They hold, as noted, that if a second case involves materially different circumstances that "change the availability, adequacy, and convenience determinations underlying [a] previous resolution," then it "warrant[s] a fresh forum analysis." *Conflict Kinetics, Inc. v. Bagira Systems, Ltd.*, 2024 WL 339347, at *3 (4th Cir. Jan. 30, 2024); *see also* 14D Wright & Miller Fed. Prac. & Proc. Juris. § 3828.5.

Consider the recent decision of the Fourth Circuit in *Conflict Kinetics*. There, a district court dismissed a first suit on FNC grounds, and the plaintiff launched a second suit alleging all the same claims but adding two defendants. The district court dismissed the second suit on the basis of the prior dismissal. The Fourth Circuit then reversed.

The Fourth Circuit explained that "[t]he issue resolved in the previous litigation was *forum non conveniens*." 2024 WL 339347, at *2. The Circuit reasoned that the issue presented in the second suit was "not the same as the one previously decided." *Id.* at *3. It explained that, "[i]n the first proceeding, the district court found the Israeli forum available and adequate, in part, because both defendants [] were indisputably amenable to process in and within the jurisdiction of the Israeli courts." *Id.* The second suit, however, included additional defendants. The court in

the first dismissal order "did not consider [one of them] at all in its forum analysis, much less decide the availability and adequacy of the Israeli forum as to" that new defendant. *Id.* And the presence of another defendant "present[s] new factual issues different from those decided in the first case." *Id.* As a result, this would a "fresh" look. *Id.*

Courts have similarly declined to give issue-preclusive effect to a prior dismissal when a plaintiff significantly trims its claims in a way that materially changes the analysis—as happened here. In *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co. Ltd.*, for example, the court declined to apply issue preclusive effect to a first dismissal in a second suit involving the same "parties (with the exception of the omission of one individual plaintiff and defendant) and the [same] gravamen of the business relationship giving rise to the claims." 2009 WL 55010, at *4 (M.D. Fla. Jan. 7, 2009). It explained that the first suit involved "tort claims of conversion, fraud, interference with contractual and business relationships, conspiracy, breach of fiduciary duty and candor, and unfair competition, as well as statutory claims of trademark infringement." The second complaint, however, brought only contract claims and "allegations" that were "significantly shrunk." *Id.* The result: Much of the evidence relevant

24

and admissible in the first suit would be inadmissible in the second. *Id.* ("Only conduct during the life of the [contract], from November 2002 through October 2005 is relevant. . . . Evidence relating to pre-contract and post-contract conduct, motives, 'schemes' and alleged fraud, misrepresentations and reliance is no longer relevant.").

The court in *J.C. Renfroe* thus rejected "defendants' invocation of the collateral estoppel doctrine declined to apply the doctrine," reasoning that "the issues currently before the [c]ourt are different from those previously implicated." *Id.* at *5. Plaintiff was entitled to a fresh look in view of having "trim[ed] its claims to only those arising out of the [contract]." *Id.*; *see also, e.g., In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 444 (S.D.N.Y. 2007) ("[B]ecause the issues currently before the Court are not identical to those previously litigated, [the] invocation of the collateral estoppel doctrine [as to FNC] must fail."), *aff'd sub nom. Geier v. Omniglow Corp.*, 357 F. App'x 377 (2d Cir. 2009); *Alexander Proudfoot, Plc v. Fed. Ins. Co.*, 860 F. Supp. 541, 544 (N.D. Ill. 1994).

This line of cases, allowing plaintiff to file a revised complaint to address an issue requiring a threshold dismissal, is no different from the

case law permitting a plaintiff to refile a lawsuit that cures a jurisdictional issue (e.g., lack of diversity) requiring dismissal of a prior action. *E.g.*, *Pailes v. U.S. Peace Corps*, 783 F. Supp. 2d 1, 6 (D.D.C. 2009).[2] A judgment dismissing a prior suit between the parties for lack of jurisdiction is no preclusive in a subsequent suit that fixes the jurisdictional issue. So too here.

2. Adhering to these precedents, AE filed a new suit substantially "trimming its claims" against Defendants, asserting no claim related to the termination of its contracts and, instead, only claims for nonpayment of substantial debts owed to AE, claims that cannot be brought in Angolan court and raise no issues that were put to the Angolan Supreme Court. *J.C. Renfroe*, 2009 WL 55010, at *5. AE's trimming means that the facts relevant to the FNC motion are substantially different, and thus the FNC issues warrant a fresh look.

---

[2] *See also Hogans v. Charter Commc'ns, Inc.*, 563 F. Supp. 3d 464, 473 (E.D.N.C. 2021); Restatement (Second) of Judgments § 20 (1982); *Gay v. Marriott Int'l, Inc.*, 2019 WL 13211111, at *2 (N.D. Ga. Nov. 18, 2019) ("Should Defendants obtain evidence that the circumstances have changed, Defendants may file a second notice of removal on the basis of diversity jurisdiction.").

Neither the SDNY nor the Second Circuit ever so much as mentioned AE's claims for Angola's non-payment of its debts. Those courts trained their focus on Angola's termination of Plaintiffs' contracts—including whether the termination was wrongful, and whether GE had tortiously caused the termination—because that was the focus of AE's SDNY action. *Aenergy*, 31 F.4th at 124 ("AE alleges that Angola wrongfully cancelled AE's Angolan power plant contracts and seized its related property in violation of state and international law. It further alleges that GE interfered with its contracts and prospective business relations in violation of state law."). And the FNC analysis focused significantly on the fact that "AE 'first chose a different forum to litigate the termination of the AE-MINEA Contracts: Angola.'" *Id.* at 129 (discussing deference). Plaintiff's elimination of those claims materially alters the FNC analysis, rendering the doctrine of issue preclusion inapt.

First, the facts relevant to the adequacy analysis are materially different, as the Second Circuit never "actually and necessarily determined" that AE's debt-collection claim could be pursued in Angolan court. *Connors*, 953 F.3d at 684. Given that the Second Circuit characterized AE's claims as challenging the termination of AE's contracts (without once

mentioning the debt-collection claim), AE's petition in Angolan Supreme Court challenging the contracts' termination was front and center. Indeed, it was dispositive to the adequacy ruling.

Consider the Second Circuit's reasoning. It "assumed" that AE was "jurisdictionally time-barred in Angola from seeking breach of contract damages." *Id.* at 130. It nonetheless found Angolan courts adequate because "even if AE cannot recover damages" there, AE "sought equitable contract remedies in Angola, allowing the Angolan court to address the essential subject matter of the dispute," namely, in the Angolan administrative suit challenging Angola's "termination" of AE's contracts. *Id.* at 130–31 & n.60 (citing AE's "prayer in the Supreme Court of Angola that the contracts 'should be considered in force'").

Reinstatement is a remedy for wrongful termination of a contract that could substitute for damages.[3] But it says nothing about whether there is a remedy in Angola for non-payment of substantial debts incurred before the contracts were terminated—the *sole* matter at issue in

_____

[3] *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846–47 (2001); *Jean-Baptiste v. D.C.*, 958 F. Supp. 2d 37, 42 (D.D.C. 2013). *Cf. Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 37 (1st Cir. 2009) (discharge of ADA claim affirmed because money damages were alternative remedy to reinstatement).

this case—and the Second Circuit never actually held otherwise. No part of AE's petition places the non-payment of these debts in issue, and no part of AE's prayer for relief in Angolan court would provide a remedy for non-payment. There is not even a request for a declaration on this issue. *See* A38–A39 (claim and prayer for relief in operative Complaint).

Meanwhile, as further detailed below, it is settled law in this Circuit that a motion seeking dismissal for FNC should be denied if there is "no other forum to which the plaintiff may repair [that] can grant the relief it may obtain in the forum it chose." *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005). The district court below "credit[ed]" AE's assertion that its claim for unpaid work—the sole claim presented in this case—"is barred by a nonwaivable limitations period" barring relief in Angola. A127. The FNC motion in this case thus presents very distinct questions regarding the adequacy of an Angolan court—and it was legal error to apply the doctrine of issue preclusion to dismiss the case.

Second, the question of the availability of a remedy for the debt that is the subject of this lawsuit was not actually "contested by the parties and submitted for judicial determination in the prior case," *In re*

*Subpoena Duces Tecum*, 439 F.3d at 743, as all the briefs focused on the question whether there was a remedy for Angola's termination.

AE's opening brief in the Second Circuit asserted that the district court's reasoning left AE with no procedural mechanism for "litigation of the time-barred contract-repudiation dispute." Case No. 21-1510, Dkt. 87 at 38–41 (2d Cir., Sept. 8, 2021) ("AE 2d Cir. Br.") ("Underscoring the point, GE's expert opined that Plaintiffs could seek their damages from Angola there by showing Angola wrongfully terminated contracts."). It did not separately focus on or discuss the debt-collection claim.

In response, Angola did not point to the request for equitable relief in Angolan Supreme Court. Angola instead disputed that the contract claims were time-barred in Angola and said that, in any event, AE could bring eight other claims (other than contract breach). Case No. 21-1510, Dkt. 103 at 38–39 (2d Cir., Sept. 8, 2021) ("Angola 2d Cir. Br."). The fact that AE sought reinstatement of the contracts in Angolan Supreme Court was mentioned elsewhere in the briefing as background (*id.* 7) and a reason to reduce the degree of deference (*id.* 34), but Angola never argued that this fact addressed AE's concerns regarding the availability of a remedy for contract breach in Angola.

All of this means that the parties never actually "contested . . . and submitted for judicial determination," *In re Subpoena Duces Tecum*, 439 F.3d at 743, the question whether the availability of equitable relief in Angolan court to remediate the termination of the contracts had any bearing on a claim for collection of a debt for work performed but never paid for. That is why the Second Circuit also did not address the question—which is the key question here. And although "claim preclusion" prevents the raising of "all that which might have been litigated previously, issue preclusion treats as final only those questions actually and necessarily decided in the prior suit." *I.A.M.*, 723 F.2d at 949. The key adequacy question in this case does not fit the issue-preclusion bill.

<u>Third</u>, adequacy aside, just as in *J.C. Renfroe*, given the substantial "trimming" of allegations and claims by AE, the relevant facts, allegations, and evidence will be materially different in this case than in the prior action. This case will involve taking the difference between the value of work that Angola obtained and the amount of money that AE received. Angola never showed below that calculating the value of the work performed will be difficult or require significant testimony, while the latter number is set forth in documents.

One thing is for sure, though, the allegations and evidence in this case will be materially different than those in the prior case. The district court's decision in the SDNY put the rationale for termination, including the claimed fabrication of documents, at the core of the case, and the Second Circuit, in affirming, explained that Angolan officials would have "important" testimony regarding "GE's alleged efforts to convince Angola to allow it to take over AE's contracts and the basis and good faith of Angola's alleged claim of contractual irregularities." *Aenergy*, 31 F.4th at 133. None of this has any bearing on this case seeking a settlement of accounts when, per Angola itself, the termination was said to be "without prejudice" to the issues raised here. Dkt. 25-16 at 9.

It is clear from the briefing that the parties in the SDNY case never put to the court whether a claim seeking solely to collect a debt, standing on its own, should proceed in U.S. court. Nor did the SDNY or Second Circuit ever actually decide that question. Thus, this is a different issue.

\*     \*     \*

In sum, issue preclusion does not resolve the FNC issue in this case given the material distinctions between this case and the prior one—including, most notably and as further detailed below, that there is no

forum where plaintiff's claim can be prosecuted in Angola, and that this trimmed-down case concerns materially different facts and considerations than the prior one. The question whether this debt-collection claim may proceed here, when the district court credited the notion it could proceed nowhere else, was not decided before, and AE should not be barred from bringing it here, in the sole forum with jurisdiction, simply because it contested termination in the SDNY.

## II. The District Court's *Forum Non Conveniens* Ruling Was Erroneous

The dismissal of this case also cannot be affirmed on the basis of the district court's alternate holding that, setting aside issue preclusion, the court "would still dismiss Aenergy's complaint on *forum non conveniens* grounds." A126. Although this Court reviews an FNC dismissal for abuse of discretion, reversal is warranted "where the trial court 'fails to consider a material factor or clearly errs in evaluating the factors before it, or does not hold the defendants to their burden of persuasion.'" *Shi*, 918 F.3d at 948; *see also El-Fadl*, 75 F.3d at 677 (reversal appropriate

"when 'the affidavit through which [the defendant] attempted to meet its burden contains substantial gaps.'").[4]

That is so in this case for either one of two independent bases. First, Angolan courts are legally inadequate and thus a FNC is inappropriate. Second, Defendants failed to meet their burden on inconvenience, as required under the FNC doctrine.

## A.    Angolan Courts Are Inadequate As A Matter Of Law

### 1.    *Defendants Must Prove The Availability Of A Remedy In Angola For Plaintiff's Claim*

On an FNC motion, the "defendant bears the burden of proving that there is an adequate alternative forum." *El-Fadl*, 75 F.3d at 677. The need to prove the existence of an adequate alternative forum entails the need to show the availability of a remedy in the other forum. Indeed, "[t]he district court need not weigh any factors favoring dismissal . . . if no other forum to which the plaintiff may repair can grant the relief it

---

[4] *See also Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 622 (6th Cir. 2018) (reversing FNC dismissal because district court did not hold defendant to its burden); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 815 (7th Cir. 2016) ("The district court erred by failing to properly place the burden."); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) ("the district court commit[ted] [] legal error by failing to hold defendants to their burden").

may obtain in the forum it chose." *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 304 (D.C. Cir. 2005).

Consider *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, which formed the basis for the Supreme Court's standard that a forum is inadequate if the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 & n.22 (1981) (citing *Phoenix Canado Oil Co. Ltd. v Texaco, Inc.*, 78 F.R.D. 445 (D. Del. 1978)). In *Phoenix Canada*, the court declined to dismiss a case on FNC ground because, in the alternative forum proposed by the defendant, "no remedy could be obtained for two of three legal theories advanced." 78 F.R.D. at 456.

Consider also *Nemariam v. Federal Democratic Republic of Ethiopia*, 315 F.3d 390 (D.C. Cir. 2003). There, the plaintiff, an Ethiopian national of Eritrean descent, sued Ethiopia in the United States, and the district court dismissed the case in deference to a commission in which Eritrea and Ethiopia could bring claims on behalf of natural persons, including plaintiff. *Id.* at 392. "Although [plaintiff] could not bring a claim herself, the district court found that Eritrea could bring a claim on her behalf." *Id.* at 393. On appeal, the plaintiff asserted "the Commission is

an inadequate forum because, even if her claim is valid, she has no personal right to a remedy from the Commission," and the two countries might set off debts against each other. *Id.*

This Court agreed with plaintiff-appellant and reversed in view of "the Commission's inability to make an award directly to [the plaintiff], and the possibility that Eritrea could set off [the plaintiff's] claims or even an award in her favor against claims made by or an award in favor of Ethiopia." *Id.* at 394. Thus, the defendant failed to meet its burden of showing the commission would "assure [plaintiff] of recovering any award at all, even if the Commission upholds her claim in full," *id.* at 395:

> While a more limited recovery than is available in the plaintiff's forum of choice does not automatically make the alternative forum inadequate, we fail to see how an alternative forum in which the plaintiff can recover nothing for a valid claim may also be deemed adequate. In other words, it would be peculiar indeed to dismiss Nemariam's claim in the United States District Court — a forum in which, assuming the court has jurisdiction, she is certain to be awarded full relief if she wins on the merits of her claim — in favor of a forum in which she has no certainty of getting any relief for a meritorious claim.

*Id.* The Court acknowledged "there [wa]s nothing in the record to suggest the plaintiffs' awards will be set off[]." *Id.* "Neither, however, is there any legal barrier to such a set off." *Id.* As the defendant bore the burden of proof to show adequacy, reversal was warranted.

Finally, consider *TMR Energy*. There, the plaintiff sought recognition of an arbitration award in the United States. This Court affirmed the denial of a motion to dismiss—even though the plaintiff "already filed actions against [defendant] in the courts of Sweden and of Ukraine" and could seek to enforce that arbitration award against property located there—because "only a court of the United States (or of one of them) may attach the commercial property of a foreign nation located in the United States." *Id.* at 303-04. In that light, the district court properly denied the motion, without considering the relevant public and private factors, because the defendant failed to meet its "burden of showing there [wa]s another forum adequate to the plaintiff's case." *Id.*

These cases together make clear that a FNC must be denied if the defendant does not show that the plaintiff can obtain a remedy in the foreign forum for the claim presented here. Moreover, it is not enough that the court declare the plaintiff's rights—the plaintiff must have a right to obtain a remedy for the claim pressed in the United States should it prevail. *Nemariam*, 315 F.3d at 395.

## 2. The Court's Findings Rendered Angolan Court Inadequate

In this case, the court below "credit[ed]" AE's assertion that its claim for unpaid work "is barred by a nonwaivable limitations period" in Angolan court. A127. That should have led the court to conclude that there is no adequate remedy in Angola—and thus to deny the motion to dismiss. As explained, the law requires dismissal where "no other forum to which the plaintiff may repair can grant the relief it may obtain in the forum it chose." *TMR Energy Ltd.*, 411 F.3d at 303.

Nonetheless, the district court still reasoned Angolan courts were adequate because the Second Circuit had ruled that AE has a "chance at equitable relief before the Angolan Supreme Court," where AE "challeng[ed] Angola's termination of the utility contracts." A127–A128.

This was legal error, requiring reversal given the unavailability finding. *Nemariam*, 315 F.3d at 395. As the district court explained and as noted above, AE's petition in Angolan Supreme Court contests the contracts' "termination," A127–A128, and only that. *See* Dkt. 25-17. By contrast AE's claims in district court concern *solely* whether AE performed more work than it was paid for, and *solely* seek to obtain damages for the excess—a claim the district court found could not now be brought in

38

Angolan court. AE's district-court complaint, unlike the SDNY complaint, does not challenge the termination of the contracts or the taking of turbines and property, or any other issue contested in AE's petition in Angolan Supreme Court. Again, the only claim in this case is for non-payment of substantial debts incurred by Angola for work performed by AE.

Nor is the Angolan Supreme Court being called upon to provide any relief that could remedy the claim here. Indeed, as earlier recounted, when it affirmed the dismissal of the SDNY action, the Second Circuit pointed to AE's request for relief in Angolan Supreme Court, where AE requested an order "that the contracts 'should be considered in force.'" *Aenergy*, 31 F.4th at 131 & n.60. But the Angolan Supreme Court is not being asked to, and has no power to award, damages on AE's administrative-law case. And moreover, the quasi-equitable relief that the court could theoretically award—the contracts' reinstatement—would not address the retrospective and entirely distinct matter of whether Angola owes AE money for work performed pre-termination. The notice of termination itself stated that the order and decree of termination would be

"without prejudice" to the "settlement of accounts," Dkt. 25-16 at 9, the sole matter at issue in this case.

If a foreign forum is inadequate when there is no guarantee the other forum would award damages to the plaintiff (as opposed to simply declaring the plaintiff's rights), *Nemariam*, 315 F.3d at 395, or because an arbitration award cannot be enforced abroad against assets located here, *TMR Energy*, 411 F.3d at 304, then surely a foreign forum where a substantial debt-collection cannot be brought at all does not become adequate merely because it might separately allow for the reinstatement of contracts—without ever addressing the outstanding debt, which is the sole issue here. Nor does a foreign forum become adequate simply because it may address matters not presented in this forum.

\* \* \*

The district court dismissed the case despite crediting Plaintiff's assertion that there is now no basis to file a case in Angolan court advancing the sole claim presented here. The doctrine of "*forum non conveniens* … presupposes at least two forums*"* to adjudicate the plaintiff's claims and "furnishes criteria for choice between them"; if there is only one available forum for the plaintiff's claim, then the plaintiff is not "forcing the

trial at a most inconvenient place," but seeking relief in the sole forum that is available. *Gulf Oil*, 330 U.S. at 507

. In that event, the motion to dismiss must be denied.

To repeat and paraphrase this Court, "it would be peculiar indeed to dismiss [AE's] claim in the United States District Court — a forum in which, assuming the court has jurisdiction, [it] is certain to be awarded full relief if [it] wins on the merits of [its] claim — in favor of a forum in which [it] has no certainty of getting any relief for a meritorious claim." *Nemariam*, 315 F.3d at 395.

## B. Separately, The Court Erred By Not Holding Defendants To Their "Heavy Burden"

"The Supreme Court has instructed both that a court may decline to exercise jurisdiction pursuant to the doctrine of *forum non conveniens* only 'in exceptional circumstances,' and that 'a defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.'" *Shi*, 918 F.3d at 948 (quoting *Gulf Oil*, 330 U.S. at 504, and *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). If the Court does not reverse the dismissal on the basis that Angolan court is inadequate as a matter of law, then it should reverse

because that court failed to hold defendants to their "heavy burden" on each element of their motion.

### 1. Defendants Did Not Even Try To Meet Their Burden On Adequacy

As AE demonstrated on reconsideration, the motion to dismiss made no attempt to satisfy the burden of showing that Angolan courts were available and adequate. That is a prerequisite for dismissal, as inconvenience alone cannot allow dismissal in the absence of an alternate forum. *TMR Energy*, 411 F.3d at 304. Given that Defendants did not try, the motion should have been denied.

Although the district court's decision stated that Defendants argued Angolan court is adequate, there was only a single unsubstantiated sentence in the argument section of Defendants' opening brief so stating, in a section seeking comity abstention (an argument the district court did not address), not FNC. *See* A127 (citing Dkt. 24-1 at 32, and discussing abstention). When it came to FNC, Defendants addressed the adequacy of Angolan courts solely by pointing to arbitration clauses in the parties' agreements, arguing that these arbitration clauses shifted the burden to AE to prove inadequacy. They urged that, in view of the arbitration clauses, "Plaintiff bears the heavy burden of demonstrating the Angola

is not an adequate alternative forum." Dkt. 42 at 19. Other than generically pointing to the SDNY's dismissal of the prior case, their FNC motion presented no other legal arguments or evidence establishing that Angolan courts would supply a remedy for the claim that plaintiff was bringing in this case.

The district court appropriately rejected Defendants' effort to shift the burden of proof to AE. A126–A127 & n.3. Defendants' argument relied upon decisions addressing dismissal motions when there is a "mandatory" forum-selection clause that "requires that litigation proceed in a specific forum"; those cases hold that when there is an "applicable, mandatory, valid, and enforceable" forum-selection clause, the district court must "always grant the motion to dismiss" in favor of the forum designated in the contract clause. *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874–75 (D.C. Cir. 2019).

These cases have no application where, as here, the defendant does not seek to have the case heard by the tribunal allegedly designated by the parties (i.e., here, defendants sought dismissal in favor of an Angolan *court*, by pointing to *arbitration* clauses). Moreover, as the district court explained, the arbitration clauses on which Defendants relied "do not

dictate where [geographically] arbitration must proceed," so do not point to Angola. A127 n.3.[5]

Despite properly "reject[ing] Defendants' argument that [they] need not show Angola is an adequate forum," the court failed to hold Defendants to their burden. A126–A127 & n.3. As is clear, "[d]efendants must submit *evidence* of an adequate and alternative forum." *Deb*, 832 F.3d at 810 (emphasis added); *see El-Fadl*, 75 F.3d at 677 (same).

Here, however, in their motion to dismiss, Defendants provided *no evidence* or argument whatsoever in an attempt to meet their burden (consistent with their flawed position that it was AE that bore the burden of proof). *See* Dkt. 42 at 19 (incorrectly arguing that "Plaintiff [was required] to carry its burden to show that Angola is not an adequate alternative forum."). So, "whatever the burden defendants had to show an adequate and alternative forum," "there can be no doubt that the defendants did not meet it." *Deb*, 832 F.3d at 811–12; *see also Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002) (Rotterdam not

_____

[5] The district court did not address Defendants' alternative argument that the cases should be referred to arbitration—an argument Plaintiff disputed. A135 n.6 ("The Court need not decide whether this suit is subject to mandatory arbitration").

available alternate forum since defendants failed to prove that any single alternative forum had subject-matter and personal jurisdiction over all parties and issues).

The Seventh Circuit's decision in *Deb* is instructive. There, the defendants' "memorandum in support of the motion to dismiss" had a section "labeled 'India is an Available Forum'" citing "case law require[ing] that 'all parties must be subject to the jurisdiction of the foreign court and amenable to process.'" *Id.* at 811. As the Seventh Circuit described it, the memorandum of law "then baldly assert[ed] that 'India meet[s] the requirements of an adequate alternative forum.'" *Id.* In the absence of any evidence, the Seventh Circuit reversed the dismissal, explained that "the cases clearly refute the idea that a district court's mere belief is enough and instead place in the hands of the defendant the burden (and generally a heavy one) of demonstrating the availability and adequacy of the foreign forum." *Id.* at 812.

The district court should have denied the motion—and reversal is warranted—on the basis that Angola's motion failed even to try to discharge its burden of showing an adequate alternative forum. The district

court correctly said that the burden was on Defendants to show that Angolan courts were adequate. They did not even try.

### 2. *Defendants Also Did Not Meet Their Burden On Inconvenience*

If there is an adequate alternative forum, then defendants must show that "a balancing of private and public interest factors strongly favors dismissal." *Shi*, 918 F.3d at 947. At this stage, a district "court must balance the relevant private and public interest factors in light of the degree of deference the plaintiff's choice of forum deserves." *Id.* at 948. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508. The doctrine is meant to ensure that plaintiff do "'not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.'" *Id.*; *see also Shi*, 918 F.3d at 950. Here as well, Defendants did not meet their heavy burden of proof.

### a. **Degree Of Deference**

The district court in this case said it was giving AE "little deference" because Plaintiff, a foreign plaintiff, was supposedly engaging in forum shopping. A129–A130. This was legal error.

In *Shi*, this Court held that the district court "erred by failing to give appropriate weight to the [plantiff's] choice to sue in the District of Columbia rather than in Taiwan," which was her home. 918 F.3d at 949. The Court explained that the rule "that 'a foreign plaintiff's choice deserves less deference' is a matter of degree." *Id.* There, the Court reasoned, the foreign plaintiff "had no choice but to sue [] D.C.-based entities here because they did not appear to be subject to jurisdiction anywhere other than in the United States." *Id.* at 950.

This case is a fortiori. The jurisdictional issue in *Shi* was waivable, and the defendants there ultimately acceded to personal jurisdiction abroad. Here, the district court both (a) "credit[ed]" AE's assertion that Angolan courts would have no jurisdiction over plaintiff's claim, an issue that was "*nonwaivable*," A127; and (b) ruled that, by contrast, the district court in D.C. had jurisdiction under the FSIA, A135–A137. It still inconsistently thought there was forum shopping. Clearly, there can be no forum shopping—no election of a less legitimate forum as opposed to a more legitimate one—where there is no jurisdiction in the allegedly legitimate forum but jurisdiction in D.C. The district court's contrary conclusion was legal error. *Shi*, 918 F.3d at 949–50.

47

### b.   Private And Public Factors

The district court's evaluation of the private and public factors was also legally erroneous.  As this Court explained, "[d]ismissal in favor of suit elsewhere 'will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice,' such as where a plaintiff chooses a particular forum 'solely in order to harass the defendant or take advantage of favorable law.'" *Shi*, 918 F.3d at 950–51 (quoting *Piper*, 454 U.S. at 249 & n.15). Again, the burden is on the defendant, and the defendants in this case failed as a matter of law to meet that burden.

### i.   Private Factors

As this Court has instructed, "in evaluating the convenience to each party, 'the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues.'" *Shi*, 918 F.3d at 951.[6]  This entails consideration of what

---

[6] "The considerations governing the private interest analysis include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining

evidence is likely needed at trial of the case in view of the factual issues likely to be disputed on the claim presented.

Thus, in *Simon v. Republic of Hungary*, this Court explained that the finding that there were "'many witnesses' in Hungary who cannot or were unwilling to travel" was insufficient to sustain the defendant's "burden of proof." 911 F.3d 1172, 1186 (D.C. Cir. 2018), *vacated on other grounds and remanded*, 592 U.S. 207 (2021). As the Court explained, the defendant there (Hungary) "failed to identify a single witness in Hungary that would need to testify at trial" and, "[i]n actuality, the evidence in this case will be largely documentary." *Id.*

Here, Defendants discussed the relevant private interests in only two sentences of the section addressing those factors. Defendants stated, without citation to evidence or anything other than the prior NY litigation, that "Plaintiff here is not a US-based entity," and "[t]he application of Angolan law, the jurisdiction over Angolan witnesses, the translation of Portuguese documents, transcripts and testimony, and administrative

---

attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive, such as enforceability of a judgment if one is obtained and relative advantages and obstacles to fair trial.'" *Shi*, 918 F.3d at 950 (quoting *Gulf Oil*, 330 U.S. at 508) (cleaned up).

difficulty of trying the case in the District all favor dismissal." Dkt. 24-1 at 29–30. The balance of this section of the brief discussed case law and claims relevant to other parts of the analysis. *Id.*

Defendants thus failed as a matter of law to meet the "heavy burden" of showing that this is one of the "rare" cases where dismissal is warranted. *Shi*, 918 F.3d at 951. As in *Simon*, there was no discussion of what issues were likely to be disputed at trial, whether Angolan officials would actually need to testify, or what disputed issues required witnesses rather than "documentary" evidence. 911 F.3d at 1186.

Moreover, Defendants' generic reference to the dismissal of the SDNY action was unavailing, as evidence going to the disputed issues there concerning the termination of the contracts—which was the core of what the SDNY case was about—would be entirely irrelevant in this debt-collection dispute. Again, the "important" testimony that the Second Circuit thought Angola's officials might provide—regarding "GE's alleged efforts to convince Angola to allow it to take over AE's contracts and the basis and good faith of Angola's alleged claim of contractual irregularities," *Aenergy*, 31 F.4th 133—simply would have no bearing at all

in this case, which, solely for purposes of this case, can proceed on the assumption that the contracts were properly terminated.

As earlier noted, the complaint here seeks the payment of a debt consisting of the difference between the amount of money that was paid to AE and the value of the work that was performed. The former number is set forth in documents—indeed, Angola's lawyer said in his affidavit that he had included "an invoice summary by contract, showing each disbursement to Aenergy's bank accounts." Dkt. 25 ¶ 5. There was no showing or even a claim that substantial (or any) testimony from Defendants' witnesses would be needed to calculate the latter number—namely, the value of the work that was performed. Moreover, again, this case seeking a settlement of accounts can proceed on the assumption (otherwise heavily disputed) that Angola's termination was proper. In that circumstance, and given the legal standard, it cannot be said that the court held Angola to its burden. *Simon*, 911 F.3d at 1186.

## ii.     Public Factors

Defendants' effort to discharge their burden on the public factors was similarly ineffective.[7]  The section of their brief addressing the public factors included (beyond a discussion of the case law) only two unsubstantiated sentences to the effect that the dispute had "no connection" to the United States.  Dkt. 24-1 at 28 ("The citizens of the District of Columbia have no connection to this uniquely Angolan dispute. Neither the parties, nor the witnesses, nor the evidence, nor performance of the contract, have any nexus to the United States.").  Defendants provided zero evidence on this point.

Rather than address Defendants' actual evidence and claims, the district court relieved them of their burden and recited the elements set forth in the case law.  "But applying the correct burden of proof is not a box-checking exercise." *Simon*, 911 F.3d at 1185.  The law places a heavy

---

[7] "The considerations governing the public interest analysis include the 'administrative difficulties' when 'litigation is piled up in congested centers,' the 'burden' of jury duty on 'a community which has no relation to the litigation,' the 'local interest in having localized controversies decided at home,' and the 'appropriateness' of trying a diversity case 'in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'" *Shi*, 918 F.3d at 953 (quoting *Gulf Oil*, 330 U.S. at 508–09) (cleaned up).

burden on Defendants to actually show inconvenience.  This is a burden they did not meet, and relieving them of that failure was error.

## CONCLUSION

The judgment of the district court should be reversed.  The district court found that it had jurisdiction, rejected defendants' Rule 12(b)(6) arguments, and accepted that there was no basis to bring this lawsuit in Angola.  Moreover, the previously filed Angolan Supreme Court case could not afford a plaintiff any remedy for the sole claim presented here. As a result, the dismissal of the SDNY action is not preclusive, and neither was it permissible to dismiss the suit in favor of Angolan courts.

March 4, 2024                              Respectfully submitted,

*/s/ Vincent Levy*
Vincent Levy
Kevin D. Benish
425 Lexington Ave., 14th Fl.
New York, NY 10017
Tel:  (646) 837-5151
Fax:  (646) 837-5150
vlevy@hsgllp.com
kbenish@hsllp.com

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)(A) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point font.

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 11,010 words excluding the parts exempted by Fed. R. App. P. 32(f).

*/s/ Vincent Levy*

March 4, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on March 4, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Vincent Levy*

March 4, 2024